Filed 6/30/14 In re Jeremiah W. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

> **California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re JEREMIAH W., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B252363 (Super. Ct. No. J1436468) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.C., <br><br> Defendant and Appellant. | |

R.C. (biological father) appeals orders of the juvenile court denying his petition for modification of an order bypassing reunification services and terminating his parental rights. (Welf. & Inst. Code, §§ 388, 366.26.)[1] We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Santa Barbara County Child Welfare Services (CWS) took Jeremiah W. into protective custody when he was five months old, because of mother's substance abuse and incarceration, among other things. The petition identified R.C. as the alleged father, and his whereabouts as unknown.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

At the April 2013 detention hearing, the court ordered a paternity test and detained Jeremiah. The paternity test appointment was initially scheduled for May 9, but the CWS worker rescheduled it to May 23 at R.C.'s request. R.C. did not appear on May 23, although the worker notified him on May 8 of the appointment.

R.C. did not appear for the jurisdictional hearing in May or the continued jurisdictional hearing in June. The juvenile court sustained the petition, declared Jeremiah a dependent of the court and bypassed services to the mother because of her failure to reunify with Jeremiah's five half-siblings and her resistance to treatment for chronic drug abuse. (§ 361.5, subds. (b)(1) & (b)(13).) The court did not order reunification services for R.C., who at the time was an alleged father. (*Id*., subd. (a).)

In July, R.C. spoke to a CWS worker and asked if he could visit Jeremiah. The worker asked him if he had submitted or would submit to a paternity test. He said he was "working on" it, but was concerned he would have to pay support.

In August, R.C. submitted to a paternity test. It established he is Jeremiah's biological father. On September 9, he appeared in court with counsel for the section 366.26 hearing. The court continued the hearing because mother was incarcerated. The paternity test result was not yet available to the court, but R.C.'s counsel informed the court of it. She asked if R.C. would be authorized to have contact with the child if the results were confirmed. The court replied, "Not authorized at this time."

In September, R.C. contacted CWS twice and asked for custody of Jeremiah. He told a CWS worker that when the mother was pregnant she told him he was the father, but he did not believe her. He said he missed the earlier paternity test appointments because he was angry, in denial, and was afraid to be a single parent at the age of 45. R.C. had no visits with Jeremiah. The court continued the section 366.26 hearing several times, and eventually set it for a contested hearing on October 17.

On October 8, R.C. filed a petition for modification in which he requested reunification services. The court heard the petition at the contested hearing. R.C. testified that he wanted to raise his son. He had stable housing at a sober living facility, Casa Esperanza, and had worked as a certified drug and alcohol counselor there. He

2

described his strong family and support network. He acknowledged his history of drug use. In his petition he asserted that he had "nearly eight years sobriety." He testified that he continued to use alcohol. He was convicted for possessing cocaine and driving without a license in 2008. He said he had not used crack cocaine since 2009. He was arrested in 2011 and convicted of being intoxicated in public. He had lived at Casa Esperanza since 2007 and family housing was available to him. He was active in his church. He participated in raising his 20-year-old daughter with whom he continued to have daily contact.

R.C. testified that he was "really angry" when mother told him she was pregnant with his child "because she didn't have a job, she didn't have a place to stay, she didn't have anything." He said, "I knew, I had a feeling he might be my child but I was resisting, I was trying to prolong having to give her 500 a month . . . because she brought her child into the world and she didn't have ground to stand on." Later, he changed his mind after he considered his belief in God and God's plans. He decided "it is up to me to stand up [and] be a man and do the right thing."

CWS reported that Jeremiah's foster parents wished to adopt him. They had provided excellent care to him since his removal five months earlier.

The court denied R.C.'s petition for modification and terminated his parental rights. It reasoned that "the mother went to the father prior to the child's birth and [said] . . . it is your child" and R.C. "turned his back." The court noted that when CWS filed the petition, R.C. did not step forward to claim the child, and he did not promptly comply with paternity testing. The court found R.C. was a "mere biological father . . . who did not promptly step forward" and had not carried his burden of demonstrating that it would be in the child's best interest to provide reunification services.

## DISCUSSION

R.C. contends the court abused its discretion when it denied his petition for modification of the order bypassing reunification services because he was a non-

3

offending parent, he requested custody, actual reunification with his son was very likely, and his son is young and unlikely to remember foster care. We disagree.

The juvenile court's initial decision to bypass services to R.C. was proper, because he had not yet established his paternity. (§ 361.5 subd. (a) [an alleged father is not entitled to reunification services].) R.C. demonstrated a change of circumstances when he eventually submitted to paternity testing, but he did not persuade the juvenile court that modification of the bypass order was in Jeremiah's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) This determination was committed to the court's sound discretion and we will not disturb its ruling absent clearly established abuse of discretion. (*Id.* at p. 318.)

The juvenile court did not abuse its discretion. A biological father who is not a presumed father may receive reunification services only if the court finds that services will benefit the child. (§ 361.5, subd. (a); *In re Joshua R.* (2002) 104 Cal.App.4th 1020, 1026.) In determining whether services would benefit the child, the court should consider the seriousness of the reason for the dependency, the strength of the existing bond between the parent and child, the strength of the child's bond to his or her present caretakers, and the length of time the child has been in the dependency system in relationship to the parental bond. (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1500, 1512 [biological father who initially lacked interest and decided to "step it up" later in dependency proceedings did not demonstrate that reunification services would be in child's best interest].)

R.C. argues that the cause of the dependency was mother's conduct, but R.C. shares responsibility. He was aware of the pregnancy, mother told him the child was his, he had "a feeling" that was true, and he knew that mother was using drugs and could not provide for the child. Nevertheless, he denied paternity in order to avoid paying support and because he did not want to be a father at his age. There was no existing bond between R.C. and Jeremiah; they had not met. The bond between Jeremiah and his present caretakers was strong. He had lived with them for half of his ten months of life, during most of which R.C. delayed submitting to a paternity test.

4

The trial court was not compelled to rely upon R.C.'s belated change of heart, given his initial lack of interest. "[A] child in the dependency system requires a more time-critical response. Once a child is placed in that system, the father's failure to ascertain the child's existence and develop a parental relationship with that child must necessarily occur at the risk of ultimately losing any 'opportunity to develop that biological connection into a full and enduring relationship.'" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 452 [biological father was not a parent entitled to reunification services because he delayed before seeking to establish paternity], quoting *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 838.) The juvenile court did not abuse its discretion when it concluded that modification would not be in Jeremiah's best interest.

DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

5

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant R.C.

Michael C. Ghizzoni, County Counsel, Scott P. Greenwood, Deputy County Counsel, for Plaintiff and Respondent.